UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| METLIFE AUTO & HOME, a/s/o,<br>Dennis Mathaisel and Clare Comm,<br>Plaintiff,<br><br>v.<br><br>ADT SECURITY SYSTEMS, INC.<br>(or Norwood, MA and Boca Raton, FL)<br>and SEDGWICK CMS<br>Defendants | Civil Action No. 10-10679-GAO |

REPORT AND RECOMMENDATION ON
ADT SECURITY SYSTEMS, INC. AND SEDWICK CLAIMS MANAGEMENT
SERVICES'S MOTIONS FOR SUMMARY JUDGMENT
[Docket Nos. 16, 17]

March 10, 2011

BOAL, M.J.

MetLife Auto & Home ("Plaintiff" or "MetLife") commenced this lawsuit as subrogee for its insureds against ADT Home Security Systems, Inc. ("ADT") and Sedgwick Claims Management Services Inc. ("Sedgwick"). MetLife asserts claims for breach of contract and negligence against ADT and for violations of Mass. Gen. Law c. 93A ("Chapter 93A") against ADT and Sedgwick in connection with damage its insureds sustained to their home after its pipes froze and subsequently burst.

This matter is before the Court on ADT and Sedgwick's motions for summary judgment. For the reasons contained herein, I recommend that the District Court GRANT Defendants' motions for summary judgment.

## PROCEDURAL POSTURE

MetLife commenced this lawsuit against ADT[1] and Sedgwick on March 29, 2010.[2] [Docket No. 6]. On April 21, 2010, ADT and Sedgwick filed a notice of removal to this court from Norfolk Superior Court. [Docket No. 1]. ADT and Sedgwick filed motions for summary judgment on August 12, 2010 [Docket Nos. 16, 17], and Plaintiff filed its oppositions on September 1, 2010. [Docket Nos. 18, 19]. This Court heard oral argument on the motions on February 28, 2011.

## FACTS[3]

### I. The Parties

ADT is in the business of selling, installing, and servicing residential alarm systems. Complaint, ¶¶ 4,6; Answer, ¶¶ 4,6 [Docket No. 4]. Sedgwick is a third-party claim administration company that entered into a contract with ADT to administer its insured and self-insured claims. Affidavit of Mindi Powers ("Powers Affidavit"), ADT Ex. B; Sedgwick Ex. A, at ¶ 3,6 [Docket Nos. 13, 14]; Affidavit of Greg Reynolds ("Reynolds Affidavit"), ADT Ex. C;

---

[1] Although it named ADT Norwood and ADT Boca in its Complaint, MetLife stated at the motion hearing that its claims were generally against ADT Security Systems, Inc. Indeed, in its answer, ADT asserted that there was no such entity as ADT Norwood or ADT Boca and identified ADT Security Systems, Inc. as the proper defendant. Answer, ¶¶ 3, 5.

[2] Plaintiff's complaint is dated March 26, 2010, but the state court docket lists the complaint as being filed on March 29, 2010. See State Court Docket [Docket No. 6].

[3] The facts are derived from the exhibits attached to the Plaintiff's Complaint [Docket No. 6] ("Pl. Ex.__"); the Statement of Undisputed Facts contained in ADT's Memorandum of Law in Support of Its Motion for Summary Judgment ("ADT Memo.") [Docket No. 14]; the Statement of Undisputed Facts contained in Sedgwick's Memorandum of Law in Support of Its Motion for Summary Judgment ("Sedgwick Memo.") [Docket No. 13]; the exhibits to the ADT Memo ("ADT Ex.__"); and the exhibits to the Sedgwick Memo ("Sedgwick Ex. _"). Plaintiff did not provide a statement of material facts or dispute Defendants' facts in its opposition papers.

Sedgwick Ex. B, at ¶ 2 [Docket Nos. 13, 14]. Sedgwick is not an insurance company, nor is it a signatory to any policies insuring ADT. Powers Affidavit, ¶¶ 2,5; Reynolds Affidavit, ¶¶ 3-4. MetLife brings this action as subrogee of Dennis Mathaisel and Claire Comm ("the Insureds"). Complaint, p. 1.

II. Residential Services Contract

On or around October 12, 2007,[4] the Insureds executed a Residential Services Contract ("Contract") with ADT for the installation and monitoring of an alarm system at their home. ADT Facts[5] ¶ 4; Pl. Ex. A, Contract. The Contract included the installation of a low temperature sensor at the Insureds' property. Id. Once installed and activated, the purpose of the low temperature sensor was to sound an audible alarm at the Insureds' home and to alert ADT when the temperature in the Insureds' home fell below a set minimum temperature. Pl. Ex. B.

The Contract contained the following standard language above the signature line:

> YOU ACKNOWLEDGE AND ADMIT THAT BEFORE SIGNING YOU HAVE READ THE FRONT AND BACK OF THIS PAGE IN ADDITION TO THE ATTACHED PAGES WHICH CONTAIN IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT. YOU STATE THAT YOU UNDERSTAND ALL OF THE TERMS AND CONDITIONS OF THIS CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5, 6, 7, 8, 9, 10 AND 22. YOU ARE AWARE OF THE FOLLOWING: NO ALARM SYSTEM CAN GUARANTEE PREVENTION OF LOSS; HUMAN ERROR IS ALWAYS POSSIBLE [.]

Contract at p. 1.

---

[4] The Insureds apparently entered into a previous contract with ADT dated March 25, 2002, see Pl. Ex. B, and the October 12, 2007 contract represented a "conversion upgrade." Contract at p. 2.

[5] Both ADT and Sedgwick make the same arguments and rely on the same statements of undisputed facts regarding Plaintiff's Chapter 93A claim. Compare Docket No. 13, p. 3- 7 to Docket No. 14, p. 2-6. Accordingly, this Court will cite only to ADT's statement of undisputed facts.

3

The Contract stated that ADT was not an insurer and that the Insureds should look exclusively to their insurance provider for the recovery of any damages sought:

> WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OF RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.

Contract at p. 4, ¶ 5.

Paragraph 10 of the Contract contained a limitations provision:

> TIME TO FILE LAWSUIT OR OTHER ACTION. YOU AGREE TO FILE ANY LAWSUIT OR OTHER ACTION YOU MAY HAVE AGAINST US OR OUR AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES WITHIN ONE (1) YEAR FROM THE DATE OF THE EVENT THAT RESULTED IN THE LOSS, INJURY, DAMAGE OR LIABILITY OR THE SHORTEST DURATION PERMITTED UNDER APPLICABLE LAW IF SUCH PERIOD IS GREATER THAN ONE (1) YEAR.

Contract at p. 4, ¶ 10.

The Contract also included language limiting the recoverable damages to a specific amount or percentage of the annual contract:

> IF IT IS DETERMINED THAT WE OR ANY OF OUR AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE. YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT. THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES

UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.

Contract at p. 4, ¶ 6.

Under the Contract, the Insureds had the option of purchasing a rider in order to increase the liability ADT would assume:

> AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU. YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AN AMENDMENT.

Contract at p. 4, ¶ 6. The Contract does not indicate that the Insureds purchased additional coverage, nor has MetLife asserted that the Insureds made any such purchases.

### III. The Loss and the Investigation

Sometime prior to March 26, 2009, the heating system in the Insureds' home failed and the cold temperature caused a water line to freeze and burst, resulting in significant water damage to the Insureds' home. ADT Facts ¶ 11. After the Insureds submitted their insurance claim, the Plaintiff provided reimbursement for total damages valued at $109,279.85. See Pl. Ex. B, January 22, 2010 Demand Pursuant to M.G.L. c. 93A.

In June 2009, Plaintiff informed ADT that it provided insurance coverage for the Insureds' property and would be investigating the loss. ADT Facts ¶ 15. Plaintiff stated that it became subrogated to the rights of the Insureds after paying their insurance claim. ADT Facts ¶ 13. By letter dated July 9, 2009, Sedgwick notified the Plaintiff that it was the third-party claims administrator for ADT and wished to inspect the security system on behalf of ADT. ADT Facts ¶ 16; ADT Ex. D. By letter dated September 14, 2009, Sedgwick informed Plaintiff that ADT

would deny Plaintiff's claim because of the waiver of subrogation provision in Paragraph 5 of the Contract. ADT Facts ¶ 17; Pl. Ex. B, September 14, 2009 Sedgwick Correspondence.

On January 22, 2010, Plaintiff sent a demand letter to ADT and Sedgwick and stated that if it did not receive payment for the full amount of damages paid to the Insureds it would file a lawsuit under Chapter 93A. ADT Facts ¶ 18; Pl. Ex. B. On February 4, 2010, Sedgwick sent a letter that was nearly identical to its September 14, 2010 letter and, citing the waiver of subrogation provision, denied Plaintiff's claim. ADT Facts ¶ 19; ADT Ex. E.

On March 29, 2010, Plaintiff brought suit alleging claims of breach of contract and negligence against ADT and for violations of Chapter 93A against ADT and Sedgwick. See Complaint; ADT Facts ¶ 20. ADT and Sedgwick argue that their motions for summary judgment should be granted because Plaintiff's claim (1) was filed after the one year contractual limitations provision; (2) is barred by the contractual waiver of subrogation; (3) does not allege a viable Chapter 93A claim because it is simply a breach of contract claim; and (4) contains allegations that are not actionable under Chapter 93A because the actions are not unfair and deceptive trade practices.

## ANALYSIS

I. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and affidavits show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] Where "the moving party does not have the burden of proof at trial, that party must make a showing that the

---

[6] Rule 56 was amended effective December 1, 2010. The substantive standard for summary judgment remains unchanged. See Fed. R. Civ. P. 56 Advisory Committee's Note.

evidence is insufficient to support the nonmoving party's case." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Once the moving party makes this showing, the burden shifts to the nonmoving party to show that a genuine issue of material fact exists without "relying on improbable inferences, conclusory allegations, or rank speculation." Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 (1st Cir. 2010) (internal quotation omitted).

In its opposition papers, Plaintiff failed to properly address the Defendants' statements of facts as required by Local Rule 56.1. See also Fed. R. Civ. P. 56. Indeed, Plaintiff stated at the motion hearing that it did not dispute Defendants' statements of facts. The Court therefore considers Defendants' statements of facts as unopposed. See also Fed. R. Civ. P. 56(e)(2). Although the facts are uncontested, this court must view the record in the light most favorable to Plaintiff as the non-moving party. See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006).

II. Status of Plaintiff

Plaintiff brings this action as subrogee of the Insureds. As subrogee, Plaintiff stands in the shoes of the Insureds. Liberty Mut. Ins. Co. v. Nat. Consol. Warehouses, Inc., 34 Mass. App. Ct. 293, 297 (1993). Therefore, Plaintiff's subrogation rights are no greater than the rights of the Insureds. Id.

III. Contractual Limitations Provision

ADT argues that Plaintiff's action is barred by the limitations clause contained in Paragraph 10 of the Contract. ADT Memo., p. 7-9. Specifically, ADT argues that Plaintiff's March 29, 2010 filing is untimely because Plaintiff had to file its complaint one year from March 26, 2009, the date the Concord Fire Department discovered that a frozen water line had burst and

caused water damage to the property. Plaintiff asserts that the "discovery rule" created by Massachusetts courts applies to this case and that the one year contractual limitations period should have started running on October 14, 2009, the date that Plaintiff determined that ADT improperly wired the low temp sensor. Plaintiff's Opposition to ADT's Motion for Summary Judgment ("Pl.'s. Opp. to ADT"), p. 4.

A. Contract Language

As stated above, paragraph 10 of the contract reads as follows:

> TIME TO FILE LAWSUIT OR OTHER ACTION. YOU AGREE TO FILE ANY LAWSUIT OR OTHER ACTION YOU MAY HAVE AGAINST US OR OUR AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES *WITHIN ONE (1) YEAR FROM THE DATE OF THE EVENT THAT RESULTED IN THE LOSS, INJURY, DAMAGE OR LIABILITY* OR THE SHORTEST DURATION PERMITTED UNDER APPLICABLE LAW IF SUCH PERIOD IS GREATER THAN ONE YEAR.

Contract, ¶ 10 (emphasis added).

Massachusetts federal courts have found that a one year contractual limitations clause is valid and enforceable.[7] See e.g. Hays v. Mobil Oil Corp., 930 F.2d 96, 100 (1st Cir. 1991). In fact, one court in this district has determined that an ADT limitations provision identical to the one at issue in this case was valid. See OneBeacon America Insur. Co. v. ADT Security Services, Inc., No 07-11464, 2008 WL 2484862, at *6 (D. Mass. June 13, 2008) (Woodlock, J.) (granting ADT's motion for summary judgment because insurance company's claim was filed over one year after the fire occurred). Reading the plain language of the provision, Plaintiff

---

[7] The contractual limitations provision would not be enforceable as to Plaintiff's Chapter 93A claim. See Anderson v. Comcast Corp., 500 F.3d 66, 76-77 (1st Cir. 2007) (one year contractual limitations provision is not enforceable against consumer Chapter 93A actions). Because Plaintiff has failed to allege a viable Chapter 93A claim, however, see Section V infra, this point is moot and otherwise dismissible.

8

should have brought its claim by March 26, 2010.[8] The issue then becomes whether the "discovery rule" applies to Plaintiff's claim.

B. Discovery Rule

Generally, a limitations period begins to run at the time of the injury for a negligence action, at the time of the breach for a contract action, and at the time an injury results from the unfair or deceptive act for a Chapter 93A action. Cambridge Plating Co., Inc. v. Napco, Inc., 991 F.2d 21, 25 (1st Cir. 1993). However, Massachusetts courts have created a "discovery rule" which provides that "regardless of the actual time of breach or injury, 'a cause of action does not accrue until a plaintiff discovers, or reasonably should have discovered, that she may have been injured as a result of the defendant's conduct.'" Id. (quoting Hoult v. Hoult, 792 F. Supp. 143, 144 (D. Mass. 1992)). The principle underlying the discovery rule is that "a plaintiff should be put on notice before his claim is barred." Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng., Inc., 396 Mass. 818, 824 (1986) (quoting Franklin v. Albert, 381 Mass. 611, 619 (1980)). Courts have applied the discovery rule to contract, tort and Chapter 93A actions. Szymanski v. Boston Mutual Life Ins. Co., 56 Mass. App. Ct 367, 370 (2002).

A plaintiff's delayed knowledge may be regarding either the fact of injury or the cause of the harm. Cambridge Plating, 991 F.2d at 25. A plaintiff is on notice of its claim once it has received "notice of a likely cause," and the limitations period will begin to run once the plaintiff has enough information "to target the defendant as a suspect, though not necessarily to identify the defendant as the culprit." Id. at 29-30.

---

[8] Plaintiff admitted at the motion hearing that absent the discovery rule its complaint would be untimely.

9

Neither party has addressed the issue as to whether the existence of a contractual limitations provision bars the application of the discovery rule. There is little Massachusetts precedent that directly addresses this issue. However, some courts have suggested that the discovery rule applies to a contractual limitations period. For example, in Parker v. Worcester Ins. Co., 247 F.3d 1 (1st Cir. 2001), the First Circuit found that a one year contractual limitations period similar to the one at hand was subject to the "implicit qualification" that "in the case of non-obvious injury or loss, the period beings to run only when a reasonable person would have learned of the injury or loss." Id. at 4. Although that case involved Connecticut law, there was no Connecticut case law on point and the court used the law of other jurisdictions in making this determination. Also, a Massachusetts Superior Court found that a consumer's complaint was timely filed against ADT despite the expiration of a similar contractual limitations provision because the court found that "it would be intrinsically unfair to find that the plaintiffs' claims were barred before the plaintiffs knew or should have known the facts giving rise to the underlying cause of action." Cramphorn v. ADT Security Systems, No. 96-4568, 2001 Mass. Super. LEXIS 269 at *4-5 (Mass. Super. May 24, 2001) (personal injury claim based on failure of temperature sensor that was not discovered until four years after the injury should not be disposed of at summary judgment). For purposes of deciding the instant motion, this Court assumes that the discovery rule applies to this case.

The determination as to when a plaintiff is on notice of its claim is a question of fact. Cambridge Plating, 991 F.2d at 29; Szymanski, 56 Mass. App. Ct. at 370; Clough v. Brown, 59 Mass. App. Ct. 405, 407-9 (2003). MetLife lists in its opposition other possible sources for the alarm failure and/or water leak that MetLife claims it had to address before it determined ADT was at fault for the loss, but none of these statements are supported by the record. Pl.'s Opp. to

ADT, p. 3. Nevertheless, ADT provides no facts in its motion or statement of facts from which this Court can conclusively decide this issue. Accordingly, I recommend that the District Court judge deny ADT's motion for summary judgment on this basis.

IV. <u>Waiver of Subrogation Provision</u>

ADT argues that Plaintiff's claims are barred because the Insureds waived their rights of subrogation in Paragraph 5 of the Contract. ADT Memo., p. 9-10. Plaintiff argues that ADT's gross negligence renders the waiver of subrogation provision unenforceable. Pl.'s Opp. to ADT, p. 4-6. As discussed below, this Court finds that the waiver of subrogation provision bars Plaintiff's claims against ADT.

A. <u>Waivers of Subrogation Provisions are Valid in Massachusetts</u>

Paragraph 5 of the contract states:

> WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. *YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OF RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.*

Contract at p.4, ¶ 5. (emphasis added).

Waivers of subrogation provisions are valid under Massachusetts law. <u>Haemonetics Corp. v. Brophy & Phillips Co., Inc,.</u> 23 Mass. App. Ct. 254, 257-8 (1986). In fact, the <u>OneBeacon</u> court found that the waiver of subrogation provision used by ADT that is identical to the one at issue in this case was valid. <u>OneBeacon</u>, 2008 WL 2484862, at *6 (granting summary judgment on insurance company's claim because insured had waived subrogation in contract).

Courts have held that waivers of subrogation are valid because "[a] waiver of subrogation does not prevent an injured party from being compensated." MiddleOak Insur. Co. v. Tri-State Sprinkler Corp., 77 Mass. App. Ct. 336, 337 n. 3 (2010) (internal citations omitted). "A waiver of subrogation serves as an allocation of risk between the parties...It reflects an intention on the part of the parties to relieve each other of liability and look only to one insurer to bear the risk ...". Id. (internal quotations omitted). This allocation of risk "comports with the strong public policy to encourage parties to anticipate risks and procure insurance covering those risks, thereby avoiding future litigation." Id. at 339; see also Amica Mut. Insur. Co. v. Clancy, No. 05-4143, 2008 WL 526032 at *4 (Mass. Super. January 4. 2008) (because injured party was compensated for the loss, public policy does not demand that the court invalidate the contractual waiver of subrogation.).

B. Gross Negligence

Plaintiff argues, however, that waivers of subrogation are ineffective in the face of gross negligence. Gross negligence is "substantially and appreciably more serious than ordinary negligence." Lumbermans Mut. Cas. Co. v. Grinnell Corp., 477 F. Supp. 2d 327, 334 (D. Mass. 2007) (Gorton, J.). "It is characterized by the want of even scant care, although it falls short of being equivalent to a willfully or intentional wrong." Id. (internal quotation omitted).

As a preliminary matter, Plaintiff's claim of gross negligence is speculative at this point. In its brief, MetLife states "Gross Negligence is exactly what occurred in the instant case." Pl.'s Opp. to ADT, p. 8. However, Plaintiff did not allege gross negligence in its complaint, nor has it sought leave to amend to do so. Rather, Plaintiff argued at the motion hearing that it intended to conduct discovery to determine whether or not it had a gross negligence claim. Yet, MetLife did not oppose the summary judgment motions by asserting that it needed discovery under Fed. R.

Civ. P. 56(f).[9] In any event, as discussed below, Plaintiff's amendment of its complaint to include gross negligence would be futile even if the Court allowed the case to continue.

Plaintiff cites Zavras v. Capeway Rovers Motorcycle Club, 44 Mass. App. Ct. 17 (1997), as support for its position that waivers of subrogation are ineffective in the face of gross negligence. Zavras does hold that Massachusetts public policy disfavors contract clauses and releases that shield a party from claims of gross negligence. Zavras, 44 Mass. App. Ct. at 19. A waiver of subrogation however, is arguably different. A release or exculpatory clause would preclude a victim from obtaining compensation for the harm suffered, whereas a waiver of subrogation provision does not prevent an injured party from being compensated. Great Northern Insurance Co. v. Architectural Environments, Inc., 514 F. Supp. 2d 139, 143 (D. Mass. 2007) (Gorton, J.). See also Amica Mut. Insur. Co, 2008 WL 526032 at *3 ("A waiver of subrogation is unlike an ordinary release from liability because the former guarantees that the injured party will be compensated and the latter does not."). This difference provides strong policy reasons for allowing waivers of subrogation, even in the face of gross negligence claims because:

> [f]or public policy considerations, the availability of a remedy for the injured party is of critical import. With regard to a waiver of subrogation, the issue is only a matter of which party will compensate the victim: the perpetrator of the gross negligence or the insurer. Thus, unlike exculpatory clauses which relieve a party from liability for its own wrongdoing and leave the victim without recourse, a waiver of subrogation clause does not prevent the injured party from being compensated.

Great Northern Insurance Co., 514 F. Supp. 2d at 143.

---

[9] At the time MetLife filed its opposition papers, the appropriate provision was Fed. R. Civ. P. 56(f). Effective December 1, 2010, the appropriate provision is Fed. R. Civ. P. 56(d).

Accordingly, this Court finds that neither Massachusetts law nor public policy concerns support Plaintiff's argument that a potential claim of gross negligence renders the subrogation waiver unenforceable. Therefore, I recommend that the District Court grant ADT's motion for summary judgment based on the waiver of subrogation clause.

V.     Chapter 93A Claim

Plaintiff asserts a violation of Chapter 93A occurred because: (1) ADT wired the temperature alarm sensor improperly; (2) ADT failed to test the installed temperature alarm sensor; (3) ADT unfairly used the contract language to bar its subrogation claim; and (4) Sedgwick engaged in bad faith settlement practices and refused to honor Plaintiff's claim. See Pl's Ex. B.[10,11] ADT and Sedgwick assert that Plaintiff's Chapter 93A claim fails because (1) it is nothing but a breach of contract claim, which cannot be enforced under Chapter 93A, and (2) the type of behavior Plaintiff complains of, e.g. ADT and Sedgwick's conduct in dealing with Plaintiff and the Insureds after Plaintiff's claim, is not covered by Chapter 93A. ADT Memo., p. 10-17; Sedgwick Memo., p. 7-13. Defendants are correct. This Court therefore recommends that, even if does not grant summary judgment as recommended above, the District Court grant Defendants' motion for summary judgment with respect to the Chapter 93A claims.

---

[10] Plaintiff's Chapter 93A count incorporated by reference the claims it made in its Chapter 93A demand letter, attached as Exhibit B to the complaint. Complaint ¶¶ 67, 71.

[11] Plaintiff also references in its Chapter 93A count that ADT failed to respond to its Chapter 93A demand letter. Complaint ¶¶ 66, 70. Failure to respond to a demand letter is not in itself an unfair or deceptive act or practice. Leet v. Celco Partnership, No. 06-40096, 2007 U.S. Dist. LEXIS 82869, at *7 (D. Mass. October 19, 2007) (Saylor, J.).

A. Breach Of Contract, Without More, Is Not A Chapter 93A Violation

Plaintiff's claims that ADT wired the temperature sensor improperly and failed to test the temperature sensor are essentially breach of contract claims.[12] A breach of contract, without more, does not violate Chapter 93A. Massachusetts Employers Insur. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995); Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169 (2008); Pepsi-Cola Met. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985); Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp. 87, 91 (D. Mass. 1996). The "more" necessary to transform a breach of contract action into a Chapter 93A action are actions with an "extortionate quality" and must exceed "the level of mere self interest." Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 474 (1991); Zabin, 73 Mass. App. Ct. at 169; Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992); Comm. Union Ins. Co. v. Seven Provinces Insur. Co., 217 F.3d 33, 43 (1st Cir. 2000). Plaintiff has not alleged that ADT or Sedgwick used the contract to extort anything from the Plaintiff.

Plaintiff argues that the Court should ignore the case law holding that breaches of contract do not constitute Chapter 93A violations because those cases involved disputes between two businesses, whereas this case is between a consumer (MetLife as a subrogee of Insureds) and a business. Pl.'s Opp. to ADT, p. 6. However, Plaintiff cites no case law to support the proposition that a breach of contract is a violation of Chapter 93A in a consumer action. Plaintiff alleges that ADT and Sedgwick treated the Insureds unfairly by denying their claim based on the

---

[12] Plaintiff also bases its Chapter 93A claim on ADT's negligence in failing to test the alarm sensor and improperly installing the alarm sensor. However, a negligent act by itself does not give rise to a claim under Chapter 93A. Vaughn v. American Automobile Assoc. Inc., 326 F. Supp. 2d 195, 199-200 (D. Mass. 2004) (Dein, M.J.) (citing Squeri v. McCarrick, 32 Mass. App. Ct. 203, 207 (1992)).

contract language. Even assuming that Plaintiff's proposition that a breach of contract is enough to establish a consumer claim under Chapter 93A, a defense based on the contract language does not have the extortionate quality referenced in the above case law.

    B. Defendants' Use Of Contract Language As A Defense Is Not Actionable Under Chapter 93A

Plaintiff alleges that the following conduct constitutes de facto Chapter 93A violations: (1) ADT's use of the contract language to bar Plaintiff's subrogation claim; and (2) ADT and Sedgwick's failure to offer the contract damages of $500. Pl.'s Opp. to ADT, p. 7; Pl.'s Opp. to Sedgwick, p. 3. ADT and Sedgwick argue that the Chapter 93A claim fails because ADT did not have a duty to negotiate a settlement of Plaintiff's claims and that, even assuming such a duty existed, pre-trial claims and negotiations are not "trade or commerce" covered by the statue. ADT Memo., p. 11; Sedgwick Memo., p. 7, 10.

        1. Outside Of The Insurance Context, Settlement Practices Are Not Covered By Chapter 93A

Unfair settlement practices are a violation of Chapter 93A only if that conduct also violates M.G.L. c. 176D. See M.G.L. c. 93A § 9(1); Morrison v. Toys R Us, Inc., 441 Mass. 451 (2004).[13] Chapter 176D states that unfair claim settlement practices, such as failing to effectuate a prompt, fair and equitable settlement of claims in which liability has become reasonably clear, are an unfair method of competition and/or unfair or deceptive act. M.G.L. c. 176D § 3(9). ADT and Sedgwick argue that because they are not in the business of insurance, and therefore

---

[13] MetLife asserts that it is not relying on Chapter 176D. Pl.'s Opposition to Sedgwick, p. 1. If that is true, then for the reasons discussed below, MetLife has no claim under Chapter 93A with respect to ADT and Sedgwick's conduct with respect to settlement, and MetLife's Chapter 93A claim could be dismissed on this basis alone.

16

cannot violate Chapter 176D, their alleged unfair settlement practices cannot form the basis of a Chapter 93A violation. This Court agrees.

Morrison v. Toys R Us, Inc., 441 Mass. 451 (2004), is squarely on point. In Morrison, the plaintiff was injured when she was struck by a falling sign while at a Toys "R" Us store ("Toys"). The store's claims adjusters conducted settlement negotiations with the plaintiff. The store countered plaintiff's demand of $250,000 with offers of $15,000, $30,000 and $45,000. Plaintiff won at trial and was eventually awarded damages of $250,000. Plaintiff then contended that Toys violated Chapter 93A when it offered low settlement amounts in view of its liability and the receipt of Chapter 93A demand letters.

The Massachusetts Supreme Judicial Court stated that such conduct is only unlawful when committed by entities "engaged in the business of insurance," and concluded that those standards cannot be extended to a "self-insurer such as Toys, which had no contractual obligation to settle the plaintiff's claim and is not otherwise regulated by the Commonwealth for insurance activities." Id. at 455. The court stated that the fact that Toys employs claims adjusters to administer and negotiate claims does not make it a member of the insurance industry, and the decision to self-insure or not insure against certain losses arising from the operation of its retail stores does not transform it into an insurer for purposes of Chapter 93A. Id. at 456.

Based on the evidence presented, ADT's position is factually similar to that of Toys. MetLife has not alleged that ADT is an insurance company. Sedgwick is a third-party claims administration company contracted by ADT to handle its insured and self-insured claims and is not an insurance carrier. Powers Affidavit, ¶¶ 3,6; Reynolds Affidavit, ¶ 2. Therefore, Plaintiff's Chapter 93A claim based on unfair settlement practices is barred under Morrison.

## 2. Settlement Practices Are Not "Trade Or Commerce"

The Supreme Judicial Court also stated in Morrison that Chapter 93A applies only to actions in the course of trade or commerce, and is not broad enough to establish a remedy for unfair or deceptive dealings in the context of litigation for companies that are not in the business of insurance. Id. at 457. The Supreme Judicial Court stated that it did not read the criteria set forth in Mass. Gen. Law c. 176D that defined unfair claims settlement practices in the insurance industry "as a blanket guarantee to consumers that claims against companies with which they do business, even claims in which liability is clear, will be settled before going to court." Id. at 458; accord Framingham Auto Sales, Inc. Workers' Credit Union, 41 Mass. App. Ct. 416, 418 (1996) ("Mere resistance to a just claim is not the stuff of c. 93A, except where made such by [176D]."); Cyran v. Sovereign Bank, No 07-40263, 2008 U.S. Dist. LEXIS 56144, at *17-18 (D. Mass. June 10, 2008) (Saylor, J.) ("Breach of contract and refusal to settle, without more, are not *per se* unfair or deceptive acts.").

Although Plaintiff alleges that ADT and Sedgwick acted unfairly in not offering a settlement amount and using the contract language to justify its denial of Plaintiff's claim, under Morrison, such conduct is not a violation of Chapter 93A outside of the insurance context. This Court therefore recommends that the District Court grant ADT and Sedgwick's motions for summary judgment on this basis.

## RECOMMENDATION

For the foregoing reasons, I recommend that the District Court GRANT ADT and Sedgwick's Motions for Summary Judgment.

## REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge